JOHN D. EDWARDS,

        Plaintiff,

v.

ANDY MEISNER, in his official capacity
as Oakland County Treasurer; OAKLAND
COUNTY, a municipal corporation; THE
CITY OF SOUTHFIELD, a municipal
corporation and the following officers,
agents, and employees both personally and
in their official capacities (KEN SIVERS,
FREDERICK ZORN, SUE WARD-WITKOWSKI,
IRV LOWENBERG, MICHAEL MANDELBAUM,
DONALD FRACASSI, DANIEL BRIGHTWELL,
MYRON FRASIER, LLOYD CREWS, NANCY
BANKS); SOUTHFIELD NON PROFIT HOUSING
CORPORATION, a 501(c)(3) corporation and its
officers, employees, and agents both personally
and in their official capacities (BOARD PRESIDENT
KEN SIVERS, MITCHELL SIMON, TREASURER,
MICHAEL MANDELBAUM, BOARD DIRECTOR,
FREDERICK ZORN, BOARD SECOND VICE-
PRESIDENT, RITA HILLMAN, LORA BRANTLEY-
GILBERT, EARLENE TRAYLER-NEAL);
SOUTHFIELD NEIGHBORHOOD REVITALIZATION
INITIATIVE, LLC, a Michigan based corporation and
its officers, employees, and agents both personally and
in their official capacities (FREDERICK ZORN, MICHAEL
MANDELBAUM, ETOILE LIBBETT) and HABITAT
FOR HUMANITY, a Michigan based corporation and
its officers, employees, and agents in their official capacities,

        Defendants.

_____/

Case No. 18-cv-13488

Paul D. Borman
United States District Judge

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND DISMISSING PLAINTIFF'S COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION

In this *pro se* action, Plaintiff seeks to undo the tax foreclosure sale of his home located at 25055 W. 10 Mile Road in Southfield, Michigan ("the Property"), and to pursue claims against the Defendants for engaging in an allegedly unlawful and discriminatory tax foreclosure and revenue raising scheme. Plaintiff alleges that his Property was wrongly foreclosed upon by the Oakland County Treasurer and transferred to a private corporation "in a thinly veiled attempt to circumvent Michigan law," specifically the Michigan General Property Tax Act, Mich. Comp. Laws §§ 211.1 *et seq*. ("the GPTA"). Presently before the Court is Plaintiff's Motion for a Preliminary Injunction to halt the execution of an Order of Eviction from the Property that was issued by the State of Michigan 46th District Court, on or about November 9, 2018.

The Court held a hearing on Plaintiff's Motion on December 18, 2018, and received responsive briefs from certain Defendants. Having considered the written submissions and entertained oral argument, the Court concludes that it lacks subject matter jurisdiction to adjudicate Plaintiff's claims and therefore DENIES the request for a preliminary injunction and DISMISSES the Plaintiff's Complaint in its entirety WITHOUT PREJUDICE.

# I.    FACTUAL BACKGROUND

Plaintiff discloses in his Civil Cover Sheet that this tax foreclosure case has previously been dismissed by the Michigan Supreme Court in Case No. 157850, *Edwards v. Oakland County Treasurer and City of Southfield Treasurer*, No. 157850, 917 N.W.2d 652 (Mem) (Oct. 2, 2018), in which the Michigan Supreme Court denied leave to appeal from the decision of the Michigan Court of Appeals in *Edwards v. Oakland County Treasurer and Southfield City Treasurer*, No. 336682, 2018 WL 1831930 (Mich. Ct. App. April 17, 2018), in which the Michigan Court of Appeals affirmed the Oakland County Circuit court's grant of summary disposition to the defendants in that case, the Oakland County Treasurer and the City of Southfield, in Plaintiff's action to set aside the judicial tax foreclosure sale of his property. A judgment of foreclosure had issued in favor of the Oakland County Treasurer on February 3, 2016, foreclosing on Plaintiff's Property for failure to pay property taxes. 2018 WL 1831939, at *2.  On July 7, 2016, the Oakland County Treasurer conveyed the Property to the City of Southfield pursuant to Mich. Comp. Laws § 211.78m(l). *Id*.  The Michigan Court Appeals upheld the trial court's determination that the defendants had complied with all of the statutory and constitutional notice requirements before seeking to foreclose on Plaintiff's property.  Specifically, the Michigan Court Appeals found that the notice provided to the Plaintiff regarding the

tax foreclosure sale of his property satisfied the GPTA and the Due Process Clause of the Fourteenth Amendment. 2018 WL 1831930, at *3. The Michigan Court of Appeals determined that Plaintiff failed to establish superior title to the property because the notice requirements were met, affirmed the trial court's finding that Plaintiff had no claim to the property and that the defendants were entitled to summary disposition on Plaintiff's claims. The Michigan Court of Appeals noted that Plaintiff had submitted no evidence that he had redeemed or even attempted to redeem the Property within the statutory period for doing so. *Id*. at *5.

Plaintiff explained to this Court at the hearing on the motion for preliminary injunction that he did not raise in the state court proceedings the claims he raises now in this Court until filing his brief in the Michigan Court of Appeals, purportedly because he had only discovered the alleged unlawful conduct of which he now complains some months after filing his complaint in the Oakland County Circuit Court. The Court of Appeals noted in its opinion that Plaintiff had submitted additional evidence and arguments "concerning . . . 42 U.S.C. § 1983 [that] were not brought before the trial court and [were] therefore not preserved for appellate review." 2018 WL 1831930, at *7. The Court of Appeals remarked that, although it declined to address the additional evidence and issues raised, none of that evidence or argument had "any bearing on the outcome of this case." *Id*. Notably, Plaintiff never sought to

4

amend his complaint in the trial court, never sought a remand from the Court of Appeals to permit the trial court to consider the new evidence, and never sought to file a separate action in state court presenting his new evidence and arguments and seeking to void the foreclosure and restore title to his name. Instead, Plaintiff filed his claims in this Court and now seeks to have this Court vitiate the judgments and orders of the state courts, most immediately to halt the order of eviction issued on November 9, 2018, by the 46th District Court, and to proceed to adjudicate his claims challenging the state's tax foreclosure scheme and ultimately to restore title to the Property in his name.

In sum, Plaintiff alleges in his Complaint in this Court that Defendants have engaged in a scheme, orchestrated by the Oakland County Treasurer in concert with the City of Southfield, to circumvent the requirements of the GPTA through improper foreclosure and transfer of tax-delinquent properties. Plaintiff does not contest the fact that he is delinquent on the taxes owed on his Property and concedes that he has not paid taxes on the Property for several years. Plaintiff alleges that this tax alleged foreclosure and transfer scheme disproportionately affects African-American home owners in the City of Southfield who are losing their homes at a higher rate than non-African-American homeowners and are being "stripped of the equity built-up over time in their properties." (Compl. ¶¶ 3, 33.) Plaintiff alleges that the foreclosure and

transfer of his Property violated the mandate of the GPTA through an agreement among the Defendants to allow the City of Southfield to transfer the Property to the Defendant Southfield Neighborhood Revitalization Initiative ("NRI") in advance of a public auction at which Plaintiff submits he could have bid to repurchase the Property. (Compl. ¶ 34.) Plaintiff also alleges that Defendant Meisner has refused to allow Plaintiff and other Oakland County residents to take advantage of a new Michigan law (2015) that allows individuals behind in their property taxes to set up payment arrangements with the County to pay off their delinquent taxes. (Compl. ¶ 4.) Plaintiff alleges that Wayne County residents were given an extension to utilize the 2015 law, but Oakland County residents were not. (*Id.*)

Plaintiff seeks injunctive relief to reverse the tax foreclosure of his Property and to halt the pending eviction ordered by the 46th District Court and seeks declaratory and injunctive relief preventing the Defendants from continuing to collect "millions of dollars per year in revenue" as a result of the alleged unlawful tax foreclosure and transfer arrangement allegedly orchestrated by the Oakland County Treasurer in concert with the City of Southfield. (Compl. ¶¶ 16-17.) Plaintiff alleges that the "scheme" constitutes race discrimination in violation of the Fair Housing Act (Count I because African-Americans lose their homes to tax foreclosure at a higher rate than non-African-American homeowners in Oakland County. (Compl. ¶¶ 30-36.) Plaintiff

alleges further that the scheme results in the illegal transfer of property (Plaintiff identifies his Property and 44 others, although the Complaint is not pled as a class action) in contravention of the GPTA requirements regarding the transfer of property prior to public auction, Mich. Comp. Laws § 211.78a(2) (governing foreclosure of delinquent tax properties).  (Compl. ¶¶ 37-40.)  Plaintiff alleges further that the scheme violates due process as a result of the Defendants' "thinly veiled scheme to do a seemingly innocuous purchase of property in the City of Southfield's name ahead of the public auction" resulting in discrimination against Plaintiff in his "quest to redeem his property at the public auction, in violation of his constitutional right to due process." (Count III.)  (Compl. ¶¶ 41-45.)  Plaintiff alleges that the Defendants are engaged in a conspiracy to defraud by collectively agreeing to conceal the intent of the transfer of tax-foreclosed properties of Plaintiff and most other African-Americans living in Southfield, in violation of the Racketeer and Corrupt Organizations Act (RICO) (Count IV.) (Compl. ¶¶ 46-51.)

In his Motion for Preliminary Injunction, which was filed on November 21, 2018, the day before Thanksgiving and two weeks after Plaintiff filed his Complaint, Plaintiff asserts that his property was illegally transferred ahead of the state auction mandated by the GPTA, Mich. Comp. Laws § 211.78(2), that occurred on July 7, 2016, when Plaintiff's property was transferred from the Oakland County Treasurer

to the City of Southfield and finally to Defendant NRI in January.  (Mot. 5, PgID 89.)

Plaintiff further asserts that Defendant NRI will be unjustly enriched if the 46th

District Court Order of Eviction is permitted to execute.  (ECF No. 8, Mot. 2, PgID

86.) Plaintiff argues that if NRI is not prevented from executing an Order of Eviction

dated November 9, 2018, Plaintiff will be evicted from his home and suffer irreparable

harm without any adequate remedy at law.  (Mot. 3-4, PgID 87-89.)  Plaintiff alleges

that he is likely to prevail on the merits of his claims, citing no relevant law in support

of this conclusion.  (Mot. 7, PgID 91.)

     The Court held a telephonic conference on November 26, 2018, the first day

following the filing of Plaintiff's motion that the Court was open.  On the call were

the Plaintiff and, on behalf of NRI, Joseph Couvreur and Matthew Nicols.  NRI agreed

to "hold off" for thirty (30) days on executing the eviction Order obtained from the

46th District Court on November 9, 2018, which stated that a writ of eviction would

be executed before November 27, 2018, to enable this Court to hold a hearing on

Plaintiff's motion for a preliminary injunction. (ECF No. 13, NRI Resp. 3, PgID 157.)

During that telephone status conference, the Court scheduled a hearing on the

Plaintiff's motion for December 18, 2018, and set forth guidelines for filing responses

and replies on the motion.  (ECF No. 10, Notice of Hearing.)

     In its Response, NRI explains that as a result of Plaintiff's failure to pay taxes

in 2012 and 2013 (a fact that Plaintiff does not dispute), the Oakland County Treasurer foreclosed on the Property. On February 3, 2016, the Oakland County Circuit Court issued a Judgment of Foreclosure, which Plaintiff challenged in the Oakland County Circuit Court by filing a Complaint on July 7, 2016. As discussed *supra*, the Oakland County Circuit Court upheld the judicial foreclosure, the Michigan Court of Appeals affirmed, and the Michigan Supreme Court denied leave to appeal from the decision of the Michigan Court of Appeals on October 2, 2018. (ECF No. 13, NRI Resp. Exs. 1, 2.)

NRI explains that the Judgment of Foreclosure vested absolute title in the Property to the Oakland County Treasurer ("the Treasurer"), who offered the tax foreclosed Property to the City of Southfield pursuant to Mich. Comp. Laws § 211.78m(1), which provides in pertinent part:

> [I]mmediately succeeding the entry of judgment under section 78k vesting absolute title to tax delinquent property in the foreclosing governmental unit, this state is granted the right of first refusal to purchase property at the greater of the minimum bid or its fair market value by paying that amount to the foreclosing governmental unit if the foreclosing governmental unit is not this state. If this state elects not to purchase the property under its right of first refusal, a city, village, or township may purchase for a public purpose any property located within that city, village, or township set forth in the judgment and subject to sale under this section by payment to the foreclosing governmental unit of the minimum bid.

Mich. Comp. Laws § 211.78(1).

NRI further explains that the City of Southfield purchased all of the tax foreclosed properties offered by the Treasurer in 2016, including Plaintiff's Property, and conveyed Plaintiff's Property and the other tax foreclosed properties to the Defendant NRI. Plaintiff has not contested these facts.

NRI explains in its Response that, as discussed *supra*, prior to Plaintiff filing his Complaint in this Court, NRI filed a summary proceedings complaint in the 46th Judicial District Court, which ruled in favor of NRI and entered a judgment of possession in favor of NRI and an Order of Eviction on November 9, 2018, authorizing the execution of a writ before November 27, 2018. As discussed *supra*, NRI agreed to refrain from executing the writ of eviction pending a ruling by this Court. NRI has contacted the court officer responsible for executing the writ and represent at the hearing on the motion for preliminary injunction that the writ will not issue until this Court issues its ruling on the pending motion.

## II. LEGAL STANDARDS

### A. Preliminary Injunction

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). Plaintiff bears the burden of demonstrating entitlement to preliminary injunctive relief and the

burden is substantial. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Such relief will only be granted where "the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't,* 305 F.3d 566, 573 (6th Cir. 2002). When considering a motion for injunctive relief, the Court must balance the following factors: (1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent preliminary injunctive relief, (3) whether granting the preliminary injunctive relief would cause substantial harm to others, and (4) whether the public interest would be served by granting the preliminary injunctive relief. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Overstreet*, 305 F.3d at 573. "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion . . . ." *Leary*, 228 F.3d at 739. Plaintiff must do more than just "create a jury issue," and must persuade the court that it has a likelihood of succeeding on the merits of its claims. *Id.* "This is because the preliminary injunction is an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in [the] limited circumstances which clearly demand it." *Id.* (internal quotation marks and citation omitted) (alteration in

original).  "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal."  *Gonzales v. Nat'l Bd. of Medical Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

### B.  Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1)

Challenges to subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) "come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin–Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). "[W]here subject matter jurisdiction is challenged under Rule 12(b)(1) . . . the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Wayside Church v. Van Buren County*, 847 F.3d 812, 817 (6th Cir. 2017) (internal quotation marks and citation omitted).  Under a facial attack, all of the allegations in the complaint must be taken as true, much as with a Rule 12(b)(6) motion. *Gentek*, 491 F.3d at 330 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). Under a factual attack, however, the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction. Where the defendant brings a factual attack on the subject matter jurisdiction, no presumption of truth applies to the allegations contained in the pleadings, and the court may consider documentary evidence in conducting its review. 491 F.3d at 330.  If the district court must weigh conflicting evidence to arrive at the factual predicate that subject matter

jurisdiction exists or does not exist, it has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts. *Id*. "'[F]ederal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*.'" *Pegross v. Oakland County Treasurer*, 592 F. App'x 380, 386 (6th Cir. 2014) (quoting *Answers in Genesis of Ky, Inc. v. Creation Ministries Int'l, Ltd*., 556 F.3d 459, 465 (6th Cir. 2009)).

## III.  ANALYSIS

This Court is precluded from reaching the merits of Plaintiff's claims because this Court lacks subject matter jurisdiction over each of the claims asserted in Plaintiff's Complaint, which seek to have this Court reverse state court judgments of foreclosure and eviction and also seek to have this Court adjudicate matters relating to the state's administration of its taxing authority.  For the reasons the follow, the Court must dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(1).

### A.  Plaintiff's Claims Seeking to Overturn State Court Orders of Foreclosure and Eviction Are Barred Under the *Rooker-Feldman* Doctrine

The *Rooker–Feldman* doctrine derives its name from two United States Supreme Court cases interpreting 28 U.S.C. § 1257(a), which vests review of state court judgments in the Supreme Court. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

"[28 U.S.C. § 1257(a) ] is designed to prohibit end-runs around state court judgments that might occur when parties go into federal court essentially seeking a review of a state-court decision." *Kovacic v. Cuyahoga County Dept. of Children and Family Services*, 606 F.3d 301, 308 (6th Cir. 2010). Pursuant to the *Rooker–Feldman* doctrine, "lower courts lack subject matter jurisdiction to review the decisions of state courts." *Givens v. Homecomings Financial*, 278 F. App'x 607, 608–09 (6th Cir. 2008). *Rooker–Feldman* applies to bar "'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* at 609 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

The *Rooker–Feldman* doctrine does not apply, however, to claims that are independent of the state court's judgment. *Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir. 2008) (citing *Pittman v. Cuyahoga County Dep't of Children and Family Serv.*, 241 F. App'x. 285, 287 (6th Cir. 2007)). The Court must determine the "source of the injury." *Id.* (citing *McCormick v. Braverman*, 451 F.3d 382, 394–95 (6th Cir. 2006)). If the source of the alleged injury is not the state court's decision, the claims are considered independent, and the *Rooker–Feldman* doctrine does not apply. *Id.* (citing *McCormick*, 451 F.3d at 394–95).

Plaintiff's motion for a preliminary injunction asks this Court to halt the eviction of Plaintiff from his Property that has been ordered by the 46th District Court pursuant to a tax foreclosure judgment issued by the Oakland County Circuit Court that was affirmed by the Michigan Court of Appeals and as to which leave to appeal was denied by the Michigan Supreme Court. Plaintiff had the opportunity to redeem the Property for a period of time following the judgment of foreclosure, but never attempted to do so. *Edwards*, 2018 WL 1831930, at *5. Pursuant to the foreclosure judgment, title to the Property vested in the Oakland County Treasurer, who sold the Property to the City of Southfield, who then conveyed the Property to Defendant NRI, which currently holds absolute title to the Property and was the "state court winner" in the 46th District Court eviction proceeding. Thus, Plaintiff's request that this Court halt the state court eviction plainly contests that order of eviction and *Rooker-Feldman* applies to bar any claim that seeks a reversal of that decision.

Plaintiff does not appear to contest the fact that the source of the injury he alleges in his motion for preliminary injunctive relief (i.e. injury caused by the pending eviction from his home) is the state court order of eviction, which he seeks to collaterally attack in this Court. He suggests, however, that his case falls within an exception to the *Rooker-Feldman* doctrine recognized by the Sixth Circuit in *Sun Valley Foods Co. v. Detroit Marine Terminals, Inc.*, 801 F.2d 186 (6th Cir. 1985). In

15

*Sun Valley Foods*, the Sixth Circuit ruled that there could be an exception to the

*Rooker-Feldman* jurisdictional bar where "the state court judgment is alleged to have

been procured through fraud, deception, accident, or mistake." *Id.* at 189. But, as

another court in this District has recognized, *Sun Valley Foods* has been applied

narrowly and limited to instances of fraud in the procurement of the state court

judgment:

> As another district court in this Circuit recently explained, there is reason
> "to question the continuing validity of *In re Sun Valley Foods*." *Dale v.
> Selene Finance LP*, 2016 WL 1170772, at *5 (N.D. Ohio Mar. 25, 2016)
> (Carr, J.). "Since recognizing [the fraud] exception [in *In re Sun Valley
> Foods*] nearly thirty years ago, the Sixth Circuit has, in cases involving
> the exception, yet to find it applicable." *Id.* at *4 (collecting cases). More
> importantly, the Sixth Circuit decided *In re Sun Valley Foods* before the
> Supreme Court clarified the scope and nature of the *Rooker-Feldman*
> doctrine in *Exxon Mobil*, *supra*, and the Sixth Circuit's more recent,
> post-*Exxon Mobil* decisions applying the doctrine make clear that the
> sole "inquiry. . . is the source of the injury plaintiff alleges in the federal
> complaint." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir.
> 2006). Thus, "[i]f the source of the injury is the state court decision, then
> the *Rooker-Feldman* doctrine would prevent the district court from
> asserting jurisdiction. If there is some other source of the injury, such as
> a third party's actions, then the plaintiff asserts an independent claim."
> *Id.* Whether a state-court judgment was improperly obtained is no longer
> a factor.
>
> As the court in *Dale* explained, permitting a plaintiff to avoid the
> *Rooker-Feldman* doctrine by alleging that the judgment under attack was
> obtained through fraud would– in contravention of the more recent
> *Rooker-Feldman* precedent described above – allow a plaintiff to pursue
> a claim in federal court even if the claim sought to redress an injury
> caused by a state-court judgment:

> After all, the [Sixth Circuit] emphasized in *McCormick, supra*, 451 F.3d at 393, that the dispositive question, for purposes of the *Rooker-Feldman* doctrine, is the source of the plaintiff's injury. If the source is a state-court judgment, then a federal court has no jurisdiction to hear the claim. But if the plaintiff can avoid that result by alleging some fraud, deception, accident, or mistake contributed to a state-court judgment, there is a wide road indeed around the *Rooker-Feldman* doctrine.

> *Dale*, 2016 WL 1170772, at *5. This in part explains why several more recent circuit-level decisions decline to follow *In re Sun Valley Foods* and/or to adopt the fraudulent-procurement "exception." *See, e.g., Scott v. Frankel*, 606 Fed. Appx. 529, 532 n.4 (11th Cir. 2015); *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426-27 (2d Cir. 2014); *West v. Evergreen Highlands Ass'n*, 213 Fed. Appx. 670, 674 n.3 (10th Cir. 2007).

> Simply put, under the most recent on-point holdings of the Supreme Court and Sixth Circuit, a plaintiff may not avoid application of the *Rooker-Feldman* doctrine merely by alleging that the state-court judgment under attack was procured by fraud.

*Iannucci v. State of Michigan*, No. 16-cv-10255, 2016 WL 4089215, at *4 (E.D. Mich. Aug. 2, 2016) (Leitman, J.).

Plaintiff does not expand in his Reply on how his claims fit within whatever remains of the "fraud" exception announced in *Sun Valley Foods*. He suggests that he did not discover the allegedly illegal "pattern of a transfer to the [City of ] Southfield first and then to NRI" until January, 2017, six months after he filed his state court complaint. He also suggests that Defendants "did an end-run around the Michigan Property Tax Act and succeeded in having property transferred to their

corporations under the guise of being for a public purpose," arguing that this is evidence of "fraud at the state court level" and a "ticket into [this Court]." (Pl.'s Reply 5, PgID 258.) But Plaintiff offers no evidence of fraud in the state court proceedings that resulted in the judgment of foreclosure against the Plaintiff, which vested title to the Property in the Oakland County Treasurer.

*Rooker-Feldman* does apply and precludes this Court from exercising jurisdiction over any of Plaintiff's claims that seek to nullify or forestall execution of the state court order of eviction. In his prayer for relief, Plaintiff requests in part an Order from this Court: "Requiring Defendant OAKGOV to reverse the tax foreclosure against Plaintiff at no cost as a result of the illegal actions outline[d] above in this conspiracy and provide marketable title free of encumbrances post-haste to Plaintiff." (Compl. 21, PgID 21.) "Plaintiff'[s] prayer for relief makes clear that the [state court judgment of foreclosure] is a source of [his] injuries, and to grant the relief that Plaintiff[] seek[s] would require the court to reverse a state-court decision." *United Methodist Union of Greater Detroit v. Highland Park*, No. 16-cv-10336, 2016 WL 7634483, at *5 (E.D. Mich. Dec. 2, 2016) (Majzoub, MJ), *adopted at* 2017 WL 24810 (E.D. Mich. Jan. 3, 2017) (Leitman, J.). ""This is precisely the type of federal district court action prohibited by the *Rooker-Feldman* doctrine." *Id*. "To the extent that Plaintiff seeks federal reversal of the state-court Judgment of Foreclosure, dismissal

under *Rooker-Feldman* is appropriate." *Id*. Plaintiff here presents a classic case for application of the *Rooker–Feldman* doctrine. Plaintiff lost a state tax foreclosure action, which resulted in title passing to the Oakland County Treasurer and the sale of the Property at a public auction. Plaintiff, dissatisfied with the state court result, seeks to have this Court "reverse the tax foreclosure" and "provide marketable title free of encumbrances post-haste to Plaintiff." (Compl., Prayer for Relief 21, PgID 21.) *See Anderson v. County of Wayne*, No. 10-cv-13708, 2011 WL 2470467, at *4 (E.D. Mich. June 20, 2011) ("It is clear from Plaintiffs' Complaint that the source of Plaintiffs' injuries is the state court judgment. Because the point of this suit is to obtain a federal reversal of a state court decision, dismissal on the grounds of *Rooker–Feldman* [is] appropriate.") (internal quotation marks and citations omitted).

Plaintiff is seeking an Order from this Court that will permit him to remain in possession of the Property. The Court cannot award this relief without invalidating the state court judgment of foreclosure and order of eviction and Plaintiff has failed to explain how the *Sun Valley Foods* fraud exception would apply here. *Rooker-Feldman* applies and bars this Court from exercising jurisdiction over Plaintiff's claims seeking to invalidate these state court judgments.

### B. The Entirety of Plaintiff's Complaint is Barred by the Tax Injunction Act and Related Principles of Comity

Even if *Rooker-Feldman* did not apply to bar Plaintiff's claims, the Tax

Injunction Act, 28 U.S.C. § 1341 ("the TIA"), does apply and, along with related and even more inclusive principles of comity, precludes this Court from exercising jurisdiction over each of the claims of Plaintiff's Complaint. The TIA provides that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. This statute represents "'the fundamental principle of comity between federal courts and state governments that is essential to 'Our Federalism,' particularly in the area of state taxation.'" *Thiokol Corp. v. Mich. Dep't of Treasury*, 987 F.2d 376, 378 (6th Cir.1993) (quoting *Fair Assessment In Real Estate Ass'n v. McNary*, 454 U.S. 100, 103 (1981)). "This exclusion of federal courts from the state taxation area is so far reaching it precludes federal courts from declaring state tax laws unconstitutional." *Id.* Even though § 1341 only specifically refers to injunctions, it also bars declaratory actions and suits seeking damages under 42 U.S.C. § 1983. *Id.*

"'It is well settled that allegations of deprivations of constitutional rights do not render the [TIA] inapplicable.'" *Pegross*, 592 F. App'x at 381 (quoting *Schneider Transp., Inc. v. Cattanach*, 657 F.2d 128, 131 (7th Cir. 1981)). Thus "mere citations to 42 U.S.C. § 1983 or the Fourteenth Amendment [can] not create federal court jurisdiction, [if] the claims [as] alleged [are] barred by principles of comity and the

TIA." *Id.* (Alterations added). "[T]he TIA 'afford[s] states the broadest independence, consistent with the federal constitution, in the administration of their affairs, particularly revenue raising.'" *Id.* at 386-87 (quoting *Wright v. McClain*, 835 F.2d 143, 144 (6th Cir. 1987)). A finding that claims are barred by the TIA requires the Court to dismiss them outright for lack of subject matter jurisdiction. *Id.* at 387.

"The TIA creates a jurisdictional barrier to the federal courts for claims of declaratory or injunctive relief brought by a party aggrieved by a state's administration of its taxing authority." *Pegross*, 592 F. App'x at 384. In *Pegross*, the plaintiff requested an injunction to prevent the Oakland County Treasurer, who had obtained the properties at issue through a tax foreclosure sale, from selling the properties to a third party. *Id.* at 385. Plaintiff asserted that he had "negotiated private deals" with the owners of the tax-foreclosed properties to purchase them himself and had "entered into redemption agreements with the County Treasurer, whereby he would pay a portion of the delinquent taxes in exchange for the postponement of the foreclosure sales and the implementation of payment plans to satisfy the tax obligations." *Id.* at 381. The County Treasurer determined that Pegross had no ownership interest in the properties and refused to accept further payments from him and scheduled the properties for sale at public auction. *Id.* Pegross sought to enjoin the sale of the properties, arguing that the County Treasurer had rescinded the agreements in

violation of his due process and equal protection rights. *Id*. Pegross sought both declaratory and injunctive relief. *Id*. Ultimately, the district court granted the defendants' motion for summary judgment on grounds other than the TIA jurisdictional bar. *Id*. at 383-84.

The Sixth Circuit found that in fact the district court lacked jurisdiction over Pegross's claims under the TIA. The Sixth Circuit reasoned that "the Oakland County Treasurer was going to sell the properties to collect unpaid property taxes," and thus an injunction or declaration by the district court "would have operated to 'enjoin, restrain or suspend' the Oakland County Treasurer's collection of the unpaid property taxes, raising the specter of the TIA's jurisdictional bar." 592 F. App'x at 384-85. The Sixth Circuit expressly found that the purchase of tax liens on foreclosed properties at auction is a "mode of tax collection[,] and so an action to enjoin it, or declare it illegal, or rescind it, or perhaps even just obtain damages on the ground of its illegality, would be barred by the [TIA] or, in the case of a damages suit, by the free-standing principle of comity." *Id*. at 386 (quoting *Wright v. Pappas*, 256 F.3d 635, 637 (7th Cir. 2001)). Here, as in *Pegross*,

> [t]he property sales that [Plaintiff seeks] to prevent served the same purpose: the collection of taxes. *See* Mich. Comp. Law § 211.78a(1) (stating that "all property returned for delinquent taxes . . . is subject to forfeiture, foreclosure, and sale for the enforcement and collection of the delinquent taxes"). An injunction would []interfere [] with the County Treasurer's ability to collect the delinquent taxes owed on the properties,

[and] is impermissible under the TIA and principles of comity.

592 F. App'x at 386 (alterations added).

The Sixth Circuit acknowledged in *Pegross* that the TIA's bar only operates to preclude jurisdiction where state remedies "are plan, adequate, and complete," and found such remedies were available to Pegross:

> There is "no significant difference . . . between remedies which are 'plain, adequate, and complete,'" such as would be barred by principles of comity, "and those which are 'plain, speedy and efficient,' within the meaning of [the TIA]." [*Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100], at n. 8 [(1981)]. "In both cases the standard 'require[s] a state court remedy that meets certain minimal *procedural* criteria.'" *Chippewa Trading Co. v. Cox*, 365 F.3d 538, 542 (6th Cir.2004) (quoting *Rosewell*, 450 U.S. at 512, 101 S.Ct. 1221) (alteration and emphasis in original). A remedy need only "provide[ ] the taxpayer with a 'full hearing and judicial determination' at which she may raise any and all constitutional objections to the tax." *See Rosewell*, 450 U.S. at 514, 101 S.Ct. 1221. Thus, the ability of the district court to hear Pegross' claims depended upon the lack of an adequate remedy in the state courts. Here, however, Michigan state courts provided such remedies.

592 F. App'x at 385 (emphasis in original). *See also Islamic Center of Nashville v. Tennessee*, 872 F.3d 377, 385 (6th Cir. 2017) (observing that a finding that the TIA encompasses a claim is not the end of the inquiry because "in order for the TIA to apply, 'a plain, speedy and efficient remedy' must also be available to plaintiffs in the relevant state court," but noting that "[t]he Supreme Court construes this exception "narrowly," and instructing that "state remedies are plain, adequate, and complete if

they provide the taxpayer with a full hearing and judicial determination at which the taxpayer may raise any federal constitutional objections to the tax") (internal quotation marks and citations omitted).

"[Plaintiff] has not argued, much less demonstrated, that he was deprived of the opportunity to obtain a 'plain, speedy and efficient remedy' in Michigan state court, a prerequisite to overcoming the jurisdictional bar of the TIA." *Pegross*, 592 F. App'x at 387. Indeed, Plaintiff thoroughly availed himself of the state courts in an effort to halt and reverse the judicial foreclosure, and he lost. Nor does Plaintiff's assertion that he did not learn of the "conspiracy" to transfer properties until January, 2017, six months after filing his state court suit challenging the foreclosure, save his claims. He could have attempted to amend his state court complaint, or filed a parallel action asserting the claims he asserts here, and any failure to timely do so would not save his claims. *Hammoud v. County of Wayne*, No. 15-cv-14461, 2016 WL 4560635, at *5 (E.D. Mich. Sept. 1, 2016), *aff'd* 697 F. App'x 445 (6th Cir. 2017) (mem) (noting that it is no bar to application of the TIA that the time to bring the plaintiff's claims in state court has lapsed, if plaintiffs "*could* have pursued those claims in state court"). "[A] number of courts have squarely faced the issue of whether a 'plain, speedy and efficient remedy' which has been allowed to lapse satisfies the Tax Injunction Act. These courts have unanimously concluded that failure to utilize a remedy does not

render that remedy insufficient under § 1341." *Rafaeli, LLC v. Wayne County*, No. 14-cv-13958, 2015 WL 3522546, at *5 (E.D. Mich. June 4, 2015) (collecting cases).

Here, all of Plaintiff's claims, which derive from the overarching allegation of an agreement among the Defendants, with the involvement of the Oakland County Treasurer in his revenue collecting role, to profit from allegedly improper foreclosure and transfer of tax delinquent properties, are barred under the TIA. At their core, the claims all complain "about allegedly discriminatory state taxation," and the TIA bar applies. *Islamic Center*, 872 F.3d at 384. Plaintiff challenges the method by which the state seeks to collect taxes and generate revenue pursuant to the GPTA, and importantly seeks to undo the state's tax foreclosure of his Property.

Plaintiff's "Race Discrimination in Violation of the Fair Housing Act" Claim (Count I), alleges that the Oakland County Defendants "had no legitimate justification for foreclosing on Plaintiff's property by skipping the state mandated steps in the tax foreclosure process by allowing Southfield Defendants to circumvent state law provisions that disallow transfer to private corporations ahead of the mandated state auction." (Compl. ¶ 34.) This claim falls within the ambit of the TIA because, as *Pegross* teaches, the TIA and general principles of comity preclude this Court from interfering with the manner in which the Oakland County Treasurer elects to foreclose on Plaintiff's Property and to collect the delinquent taxes owed on that Property and

to return revenue to the State and return tax foreclosed properties to the tax roll. Any interference with the County Treasurer's "ability to collect delinquent taxes owed on the [Property] . . . is impermissible under the TIA and principles of comity." *Pegross*, 592 F. App'x at 386. An adequate remedy exists in state court for this claim as both federal and state courts have jurisdiction to hear FHA claims. *See* 42 U.S.C. § 3613(a)(1)(A). *See, e.g. MorningSide Commun. Org. v. Wayne County Treasurer*, No. 336430, 2017 WL 4182985, at *4 (Mich. Ct. App. Sept. 21, 2017) (noting that "42 USC 3613(a)(1)(A) vests concurrent federal and state jurisdiction over FHA claims").

Plaintiff's "Illegal Property Transfer in Contravention of Michigan Law" Claim (Count II) alleges that the arrangement between the Oakland County Treasurer and the City of Southfield for purchase of Plaintiff's Property, with payment of revenue back to the Oakland County Treasurer, violated Michigan law because sale to a private entity is not an acceptable public purpose under Mich. Comp. Laws § 211.78m(2). This claim also clearly calls for this Court to interfere with the manner in which the Oakland County Treasurer has elected to collect the delinquent taxes on Plaintiff's foreclosed Property, i.e. through the purchase of tax lien property and sale to the City of Southfield for subsequent sale to a private entity. Plaintiff alleges that this transfer process somehow interfered with Plaintiff's ability to redeem the Property. Again, *Pegross* instructs that this Court is barred from exercising jurisdiction over a claim

that implicates the state-created process for collection of unpaid property taxes under the TIA and principles of comity. There is an adequate remedy in state court for this state-law claim.

Plaintiff's "Violation of Due Process Claim Under 42 U.S.C. § 1983" (Count III) alleges that the Oakland County Treasurer and the City of Southfield conspired to deprive Plaintiff of a meaningful opportunity to be heard prior to transferring Plaintiff's Property as part of the tax collection scheme. Again, *Pegross* instructs that this Court is barred from exercising jurisdiction over such a claim under the TIA and principles of comity. There is an adequate remedy in state court for this claim, which alleges violations of both the Federal and Michigan Constitutions.

Plaintiff's RICO claim (Count IV), like the plaintiff's claim in *Pegross*, alleges that the Oakland County Treasurer told Plaintiff he could bid to repurchase his Property at the July, 2016, public auction, when in fact the Oakland County Treasurer had already arranged with the City of Southfield to allow the City to purchase all of the tax foreclosures in Southfield from the County. "The property sales that [Plaintiff] sought to prevent served [] the purpose [of] the collection of taxes." *Pegross*, 592 F. App'x at 386. Any interference with the County Treasurer's "ability to collect delinquent taxes owed on the [Property] . . . is impermissible under the TIA and principles of comity." *Id.* An adequate remedy exists in state court for Plaintiff's

RICO claim.  *See Jasper v. Bloomfield Village Investor Holding, LLC*, No. 337098, 2018 WL 1611461, at *5 n. 6 (Mich. Ct. App. April 3, 2018) ("Although based on federal law, state courts do in fact have subject-matter jurisdiction to hear claims under the RICO act.") (citing *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990)).  *See also Goldman v. Goldman*, No. 274060, 2008 WL 2780273, at *4-7 (Mich. Ct. App. July 17, 2008) (examining the elements of plaintiff's RICO claim).[1]

It is important to note that the TIA does not apply to claims that do not directly threaten or involve the "ultimate public benefit" from the revenue-raising function of the state.  The Sixth Circuit has explained this distinction as follows:

> [T]he Act operates "particularly" to protect the States' "revenue raising" mechanisms, *Wright v. McClain*, 835 F.2d 143, 144 (6th Cir.1987), and only to shield "taxes" defined in relevant part as "assessment[s] ... for general revenue raising purposes," *Hedgepeth v. Tennessee*, 215 F.3d 608, 614 (6th Cir.2000). All of this suggests that when a lawsuit does not directly threaten the "ultimate . . . public benefit" of raising tax revenue, *Am. Landfill, Inc. v. Stark/Tuscarawas/Wayne Joint Solid Waste Mgmt. Dist.*, 166 F.3d 835, 838 (6th Cir.1999), as is true here, the Act does not apply.

---

[1] Plaintiff also complains about the Oakland County Treasurer's "discrimination" against Oakland County tax residents by not allowing them to take advantage of a new law apparently allowing certain tax payment deferrals when Wayne County tax residents were able to take advantage of the new law.  (Compl. ¶ 4.)  While it is unclear how this allegation fits into any of the four Counts of Plaintiff's Complaint, it is clear that such a claim, involving the Oakland County Treasurer's decision to allow tax deferrals, would clearly fall within the TIA's ambit and this Court would lack jurisdiction to hear such a claim.

*BellSouth Telecommunications, Inc. v. Farris*, 542 F.3d 499, 502 (6th Cir. 2008). In *BellSouth*, Kentucky imposed a tax on the gross revenues of telecommunications providers and banned providers from collecting the tax directly from consumers and prohibited the providers from identifying the new tax as a line item on their customer invoices. *Id*. at 500. "No one dispute[d] Kentucky's authority to impose this tax, the providers' responsibility to pay it or Kentucky's authority to prevent providers from switching the legal incidence of taxation to their customers. And no one dispute[d] the providers' right to raise prices to account for this additional cost of doing business. The question [was] whether the Commonwealth [could] permit providers to raise prices but prohibit them from using their invoices to say why without running afoul of the "freedom of speech" protections of the First (and Fourteenth) Amendment." *Id*. Before reaching the First Amendment question the Sixth Circuit examined its jurisdiction to reach the merits of the claim under the TIA. Observing that "nothing about this lawsuit that seeks to avoid paying taxes or to limit the amount of taxes due," the Sixth Circuit concluded that nothing about the requested injunction interfered with Kentucky's interest in collecting the tax:

> That is not a request for a tax injunction; that is a request to end a ban on what the provider may say about the tax and on what the provider may do to collect the tax from someone else. If granted, this relief would not interfere with the relationship between the body that imposed the tax (the Commonwealth) and the bodies that owe the tax (the providers). It merely would allow the providers to identify the tax on the bill and allow

them in the process to explain to their customers why they have raised prices. The Tax Injunction Act does not prevent such relief, relief that does not halt the collection or assessment of taxes but that merely facilitates what businesses have done for a long time—recover the costs of doing business (including paying new taxes) from customers for as long as the market will bear it.

542 F.3d at 502. The Sixth Circuit concluded that the TIA did not apply to "a law that purports to restrict *a taxpayer's* efforts to collect [a tax] from others," concluding that the term "collection" in the TIA refers to a *State's* assessment and collection and "not a taxpayer's efforts to recover the costs of that tax from consumers." *Id*. at 503 (emphasis in original).

In *Islamic Center, supra*, the Sixth Circuit again addressed the reach of the TIA and the comity doctrine to preclude federal court jurisdiction over actions seeking to enjoin state tax collection efforts. In *Islamic Center*, the plaintiff, Islamic Center of Nashville ("ICN"), was a religious non-profit that began construction on a new school building and obtained financing through an *ijara* agreement, a financing mechanism in which a financial institution purchases and asset, retains title, and leases the asset back to the client until the end of the lease when the client purchases the asset – an arrangement necessary to comport with Islamic law that prohibits "making money from money." 872 F.3d at 379 n. 1. During the time that the bank held title to the school, the property was on the tax roll and the property was only returned to tax exempt status when ICN completed payment and regained title. *Id*. at 379. ICN

sought, but was denied, retroactive application of the property tax exemption for the period of time that the bank held title to the property and tax was assessed. *Id*. ICN sought administrative review of the decision, which the State Board of Equalization upheld. *Id*. at 380.

ICN filed suit in federal court asserting claims under the federal Religious Freedom Restoration Act ("RFRA") and the federal Religious Land Use and Institutionalized Persons Act ("RLUIPA"), among others. ICN sought monetary damages as well as injunctive and declaratory relief. The Sixth Circuit concluded that ICN's claims were rightfully dismissed by the district court under the TIA for lack of subject matter jurisdiction. *Id*. at 380-81. Reviewing the purpose of the TIA, the Sixth Circuit observed:

> The TIA states: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. This prohibition, the Supreme Court has explained, "has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations." *Tully v. Griffin, Inc.*, 429 U.S. 68, 73, 97 S.Ct. 219, 50 L.Ed.2d 227 (1976); *cf. Dows v. Chicago*, 11 Wall. 108, 110, 20 L.Ed. 65 (1871) (Field, J.) ("[I]t is of the utmost importance to [the States] that the modes adopted to enforce the taxes levied should be interfered with as little as possible."). The TIA has accordingly been understood as reflecting "the fundamental principle of comity between federal courts and state governments that is essential to 'Our Federalism,' particularly in the area of state taxation." *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 103, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981).

The prohibition also has roots in the evolution of the Supreme Court's own doctrine. In the years following the Court's holding in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), "that federal courts may enjoin state officers from enforcing an unconstitutional law, Congress also recognized that the autonomy and fiscal stability of the States survive best when state tax systems are not subject to scrutiny in federal courts." *Fair Assessment in Real Estate Ass'n*, 454 U.S. at 102–03, 102 S.Ct. 177; *see also Hibbs v. Winn*, 542 U.S. 88, 104–05, 124 S.Ct. 2276, 159 L.Ed.2d 172 (2004) ( "In short, in enacting the TIA, Congress trained its attention on taxpayers who sought to avoid paying their tax bill by pursuing a challenge route other than the one specified by the taxing authority."). Thus, "[a] federal district court is under an equitable duty to refrain from interfering with a State's collection of its revenue except in cases where an asserted federal right might otherwise be lost." *Colonial Pipeline*, 474 F.3d at 218 (quoting *Tully*, 429 U.S. at 73, 97 S.Ct. 219); *see also King v. Sloane*, 545 F.2d 7, 8 (6th Cir. 1976) ("The federal courts will not entertain actions for relief from State or local taxes unless federal rights are protected in no other way."). At bottom, this duty "rest[s] on a 'state-revenue-protective' rationale." *Hill v. Kemp*, 478 F.3d 1236, 1249 (10th Cir. 2007) (quoting *Hibbs*, 542 U.S. at 106, 124 S.Ct. 2276).

872 F.3d at 381.  The Sixth Circuit held that the TIA applied to ICN's "as applied" claims challenging the state tax scheme and seeking prospective declaratory and injunctive relief, finding that the claims were "closely tied to the collection of a tax — that is, the official recording of liability that triggers levy and collection efforts . . . [and] fit[] with the TIA's state-revenue-protective moorings, and the TIA's purpose of preventing state taxpayers from obtaining federal-court orders enabling them to avoid paying state taxes."  *Id*. at 382 (internal quotation marks and citations omitted). The Sixth Circuit noted that "ICN's recharacterization of its claims for relief as wholly

'prospective,' does not change the outcome of this case." *Id*. at 383. The Court distinguished the Supreme Court's holding in *Hibbs* that the TIA did not apply to plaintiffs' Establishment Clause claims challenging an Arizona law that provided a tax credit to taxpayers who made donations that ultimately were directed to religious schools, noting that the plaintiffs in *Hibbs* were not seeking to avoid paying taxes, but were seeking to have "the state tax others more." *Id*. at 384.

Finally, the Sixth Circuit in *Islamic Center* held that even if the TIA did not bar jurisdiction, the more "embracive" doctrine of comity, "would still bar [the] way." *Id*. at 384. That doctrine "precludes the exercise of original federal-court jurisdiction to hear a taxpayer's complaint about allegedly discriminatory state taxation," and instructs "lower federal courts [not] to give audience to the merits of suits alleging uneven tax burdens." *Id*. at 384-85. And this is precisely what we have here. Plaintiff asserts in his Complaint that the "scheme" he challenges ultimately returns revenue to the Oakland County Treasurer and, finding the scheme disproportionately affecting African-American home owners in the City of Southfield, he asks this Court to halt this revenue raising process and specifically seeks to have this Court reverse the state court judgments foreclosing on his Property and to return title to his name "post haste." This Court is barred from entertaining this suit under the *Rooker-Feldman* doctrine, the TIA, and general principles of comity.

Although the motion presently before the Court is for preliminary injunctive relief only, because the TIA operates as a jurisdictional bar to each of Plaintiff's claims, the Court must *sua sponte* dismiss the case for lack of subject matter jurisdiction. The Sixth Circuit in *Pegross* held that the district court erred in failing to dismiss for lack of subject matter jurisdiction after the district court found, on a motion for preliminary injunction, that plaintiff had no likelihood of success based on the TIA bar:

> The district court did recognize that Pegross' claims were "barred by the Tax Injunction Act" when it overruled his motion for preliminary injunction and motion for a temporary restraining order, but only for the purpose of determining that Pegross was unlikely to prevail on the merits of his claims. (R. 13 at 2.) A more searching jurisdictional inquiry should have followed. *See, e.g., Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009) ("[F]ederal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*.").

592 F. App'x at 386. Although the district court had ultimately entered summary judgment in favor of the Oakland County Treasurer on other grounds, the Sixth Circuit vacated the summary judgment and ordered the case dismissed for lack of subject matter jurisdiction. *Id*. at 387. "The TIA removes this [Court's] jurisdiction for cases in which state taxpayers seek federal-court orders enabling them to avoid paying state taxes. To have [his] constitutional, federal statutory, and state statutory claims considered on the merits, [Plaintiff] was required under the TIA [and principles

of comity] to bring them to the proper state court." *Islamic Center*, 782 F.3d at 386 (internal quotation marks and citation omitted) (alterations added).

## IV.    CONCLUSION

Accordingly, Plaintiff's Motion for a Preliminary Injunction is DENIED and Plaintiff's Complaint is DISMISSED  WITHOUT PREJUDICE for lack of subject matter jurisdiction.[2]  A dismissal for lack of subject matter jurisdiction is without prejudice, leaving Plaintiff free to attempt to bring these claims "in an appropriate state forum." *Rafaeli*, 2015 WL 3522546, at *10.


s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  January 2, 2019

---

[2]  Given the Court's dismissal of Plaintiff's Complaint on jurisdictional grounds, Defendants' pending motions to dismiss, ECF Nos. 22, 23, 24, are DISMISSED AS MOOT.  *Wayside Church*, 847 F.3d at 816 (observing that the court of appeals was "'bound to consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction'") (quoting *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)).